***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At the relevant times herein, Key Benefit Services was the carrier on the risk.
3. Plaintiff's average weekly wage at the time of his injury, including overtime and all allowances, was $340.00, yielding a compensation rate of $226.68 per week.
4. The following exhibits were stipulated into evidence at the Deputy Commissioner hearing and subsequent thereto:
a. A notebook of medical records, marked as Stipulated Exhibit (2);
 b. A packet of Industrial Commission forms and orders, marked as Stipulated Exhibit (3);
 c. A payment history relating to plaintiff's claim, marked as Stipulated Exhibit (4);
 d. An Industrial Commission Form 22 wage chart, marked as Stipulated Exhibit (5), and;
 e. A packet of wage records from WISSCO, marked as Stipulated Exhibit (6).
5. At the hearing before the Deputy Commissioner, defendants submitted the following exhibits:
 a. Plaintiff's answers to defendants' first set of interrogatories, which was admitted into the record and marked as Defendants' Exhibit (1);
 b. 7 December 1998 correspondence from defendant-employer to plaintiff, which was admitted into the record and marked as Defendants' Exhibit (2), and;
 c. 17 February 1999 correspondence from defendant-employer to plaintiff, which was admitted into the record and marked as Defendants' Exhibit (3).
6. Subsequent to the Deputy Commissioner hearing, plaintiff was ordered to produce a copy of the registration card for the tag that was used in the operation of the Harley-Davidson motorcycle in October 2000. Said documents have now been submitted and are admitted into the record and marked as Defendants' Exhibit (4).
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. Plaintiff, who was forty one years old on the date of the hearing before the Deputy Commissioner, completed the eighth grade in school. After leaving school, plaintiff painted water towers and tanks for approximately ten years. Next, plaintiff worked as a landscaper for approximately one year. Plaintiff then painted houses for four to five years followed by a period in which he worked with concrete restoring surfaces from 1989 until May 1996.
2. Plaintiff began working for defendant-employer in May 1996 doing concrete work, which included making forms, pouring and finishing concrete. His duties required heavy lifting, bending and stooping.
3. On 23 January 1998, while working for defendant-employer, plaintiff was hit in the back of his head by a concrete block which had been tossed by another employee. This concrete block measured 16" x 8" x 4" and weighed approximately ten (10) pounds.
4. Defendants filed an Industrial Commission Form 60 Admission, accepting the compensability of plaintiff's on the job injury on 8 December 1998. Pursuant to this Form 60, defendants paid plaintiff indemnity compensation through 9 July 1999.
5. Following this incident, plaintiff was transported to the Alamance Regional Medical Center Emergency Room by Mr. Cam Roberts, his foreman and son of defendant-employer's owner. Plaintiff was diagnosed as having sustained a head injury, and was prescribed medications and referred to Dr. E. L. Lenes, an orthopaedist.
6. Dr. Lenes first examined plaintiff on 26 January 1998 and diagnosed a contusion at the base of the skull with a possible cervical strain. Following his examination, Dr. Lenes removed plaintiff from work through 25 February 1998.
7. On 16 March 1998, plaintiff returned to Dr. Lenes, complaining of frequent headaches and soreness in his neck. Plaintiff was prescribed additional medication, was referred to a neurologist and released to return to light duty work the following day.
8. Subsequent to his on the job injury, plaintiff was also examined by Dr. Ann Haviland on 27 January 1998. Dr. Haviland noted a recent history of blurred vision, headaches, earaches and neck pains with occasional, brief paresthesias in plaintiff's left arm. Dr. Haviland diagnosed plaintiff as having sustained a cervical strain and scalp contusion and prescribed medications. Upon subsequent examinations through 26 February 1998, these conditions had not improved.
9. On 25 March 1998, plaintiff was examined by Dr. Charles R. Stewart, a neurologist at the Kernodle Clinic. Dr. Stewart diagnosed plaintiff with a moderately severe concussion manifested by headaches and nausea, as well as difficulty focusing mentally and personality change.
10. Dr. Stewart prescribed several medications and monitored plaintiff's condition through October 1998. During this period, Dr. Stewart noted no significant improvement in plaintiff's headaches or the pain he was experiencing in the temples and back of his head. Dr. Steward further noted that plaintiff was increasingly more emotional and had problems with his sleep and mood changes. Dr. Stewart diagnosed occipital neuralgia secondary to trauma in the suboccipital region and referred plaintiff to a mental health clinic for treatment for stress management and depression.
11. Plaintiff was first examined at the mental health clinic on 1 July 1998. On that date, plaintiff's symptoms included sad mood and affect, visual hallucinations and poor long and short term memory. Plaintiff was diagnosed with mood disorder due to head trauma and depression. Plaintiff was prescribed medications and received treatment through 9 December 1998. During this period, there were no appreciable changes in his psychological condition.
12. Upon referral by defendants, plaintiff was examined by Dr. C. Thomas Gualtieri, a neuropsychiatrist, on 3 November 1998. Following his examination of plaintiff, Dr. Gualtieri found that plaintiff sustained a mild brain injury eight months previously and that plaintiff had been unable to work since that time. Dr. Gualtieri diagnosed post-traumatic neuritis, damage to nerves on the surface of the scalp, which caused plaintiff's headaches.
13. On 22 December 1998 Dr. Gualtieri released plaintiff to return to part-time light-duty work. Dr. Gualtieri released plaintiff to full-time work with a fifty pound lifting restriction as of 12 February 1999.
14. On 5 October 1999, Dr. Gualtieri stated and the Commission finds that plaintiff reached maximum medical improvement. Dr. Gualtieri assigned plaintiff a ten percent permanent partial disability rating relative to his headache, chronic pain and cognitive impairment.
15. Plaintiff testified at the Deputy Commissioner hearing that the owners of defendant-employer informed him that he could not return to work for defendant-employer as long as he continued to experience headaches. After being released by Dr. Gualtieri, plaintiff was sent three letters offering employment from Ms. Jessie Roberts, part owner of defendant-employer. These letters were marked as Defendants' Exhibits (2) and (3). Based upon the contents of these letters, defendant-employer offered to reinstate plaintiff to his previous job and salary. The greater weight of the medical evidence shows that the employment offered to plaintiff in these communications was not suitable given his physical and mental condition and the restrictions imposed by Dr. Gualtieri. In addition to the fifty pound lifting restriction, Dr. Gualtieri believed that it was not a good idea for plaintiff to return to concrete work. The record contains some reference to a thirty-five pound maximum lifting required by the job, but neither plaintiff nor the two employer witnesses were asked specifically what the lifting requirements were and the job description is not in the evidence of record.
16. Following his 23 January 1998 injury by accident, plaintiff sought and secured work helping to stage motorcycle races. Plaintiff worked in this capacity for three months from approximately 1 February 1998 through 30 April 1998, earning a total of $950.00.
17. At the Deputy Commissioner hearing, plaintiff testified that he contacted the carrier when he began working with the motorcycle racing business regarding suspending his checks. Despite plaintiff's effort, he continued to receive checks for temporary total disability compensation from defendants during all but one week of the period he worked with the motorcycle racing business.
18. For a period of sixteen weeks, from approximately 1 February 1999 through 31 May 1999, plaintiff worked for Williams Industrial Sales Service Company (WISSCO). Plaintiff's job duties for WISSCO included coating concrete floors with epoxies and polyester resins, sweeping floors, and stripping the floors. Plaintiff earned $12.00 per hour, and worked from zero hours in a two-week period up to 105.5 hours in a two-week period. However, during the majority of the sixteen-week period, plaintiff worked less than 40 hours each two-week period. Because of the combination of heat and strenuous labor which aggravated his headaches, plaintiff was unable to continue working for WISSCO. During the period plaintiff worked for WISSCO he earned a total of $3,690.00.
19. Following his employment with WISSCO, plaintiff attempted to locate suitable employment in mills, oil change stations and in janitorial jobs. Plaintiff also attempted to obtain his GED at Alamance Community College, but he did not pass the test.
20. In June 2000, plaintiff found part-time work at Dave's Speed Shop cleaning tools and parts, running errands and cleaning the shop. Plaintiff worked three to six hours a day and earned $100.00 per week. Plaintiff worked in this capacity for five months, from approximately 1 June 2000 through 31 October 2000 when the shop went out of business.
21. As the result of his 23 January 1998 injury by accident, plaintiff sustained a concussion and developed post-traumatic neuritis, severe headaches, depression, personality changes, memory deficits and chronic pain.
22. Other than for the limited periods in which plaintiff worked at part-time, temporary jobs earning reduced wages, as the result of his 23 January 1998 injury by accident, plaintiff has been unable to earn the wages which he received at the time of the injury in the same or any other employment. Plaintiff has made reasonable but unsuccessful efforts to find suitable employment.
23. Prior to his 23 January 1998 injury by accident, defendant-employer provided an additional benefit to plaintiff by providing transportation to and from work each day. Despite entering into a stipulation regarding plaintiff's average weekly wage, plaintiff contends that that the reasonable value of this additional benefit should be included and considered in determining whether an offer of reinstatement by defendant-employer is suitable in terms of wages.
24. All relevant factors are considered when determining whether a particular job offer to an injured employee is suitable. However, plaintiff has made no formal motion to have the stipulation in question set aside. Furthermore, there has been no showing of misrepresentation, undue influence, collusion or any other recognized ground upon which to set aside a stipulation entered into by the parties.
25. Counsel for plaintiff requested an attorney's fee in the amount of thirty-three and one-third percent of the compensation awarded in this matter and has submitted a fee agreement, signed by plaintiff, in support of this request. Counsel for plaintiff's services in this matter were neither unusual nor extraordinary. Based upon the amount and type of work performed in pursuit of plaintiff's claim and the nature of the services provided, counsel for plaintiff's fee agreement is unreasonable as is his request for a thirty-three and one-third percent attorney's fee. The usual and customary attorney's fee of twenty-five percent is reasonable in this matter based on the complexity of plaintiff's claim and the type and nature of the work performed. The issue of plaintiff's attorney's fee was not appealed to the Full Commission.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 23 January 1998, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. Defendants admitted compensability of plaintiff's injury by accident on 23 January 1998 by filing a Form 60. However, the Form 60 does not create a presumption of continuing disability and therefore the burden of proving disability remains with plaintiff. Sims v.Charmes/Arby's Roast Beef, 142 N.C. App. 154, 542 S.E.2d 277 (2001).
3. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993) (citations omitted). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
5. In the instant case, plaintiff met his initial burden to show that he is disabled. Plaintiff was unable due to his compensable injury to return to his regular job working in concrete. The greater weight of the medical evidence showed that plaintiff's job with defendant-employer was not suitable and therefore the Commission finds that plaintiff's refusal to accept this employment was justified. N.C. Gen. Stat. § 97-32. In addition, plaintiff has shown by the greater weight of the evidence that he is unable to find other employment, except for part-time, temporary jobs and that his inability to find work is due to his work-related disability. Plaintiff's ability to sporadically perform temporary jobs is not evidence of plaintiff's ability to earn the same or greater wages as before his injury. See, Daughtry v. Metric ConstructionCo., 115 N.C. App. 354, 446 S.E.2d 590, disc. rev. denied, 338 N.C. 515,452 S.E.2d 808 (1994).
6. Plaintiff has shown that he is capable of some work but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment. Therefore, plaintiff is disabled and is entitled to be paid by defendants ongoing total disability compensation at the rate of $226.68 per week beginning 24 January 1998 and continuing until such time as plaintiff returns to work or until further Order of the Commission. N.C. Gen. Stat. § 97-29. This amount is subject to a deduction for wages earned by plaintiff in his brief, unsuccessful attempts to return to work.
7. Defendants are entitled to a credit for any total disability compensation or partial disability compensation previously paid to plaintiff. N.C. Gen. Stat. § 97-42.
8. As a result of his 23 January 1998 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses. N.C. Gen. Stat. §§ 97-25; -25.1.
9. Because plaintiff failed to make a formal motion to set aside the stipulation regarding his average weekly wage and because there has been no showing of misrepresentation, undue influence, collusion or any other sufficient ground upon which to set it aside, the stipulation stands as entered into by the parties. See e.g., Lowery v. Locklear Const.132 N.C. App. 510, 512 S.E.2d 477 (1999).
10. Based upon the amount and type of work performed in pursuit of plaintiff's claim and the nature of the services provided, the usual and customary fee of twenty-five percent of the compensation to which plaintiff is entitled is reasonable for counsel for plaintiff. N.C. Gen. Stat. § 97-90.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $226.68 per week beginning 24 January 1998 and continuing until such time as plaintiff returns to work or until further Order of the Commission. Any compensation which has accrued shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved below and the credit in defendants' favor. Payment of this compensation is subject to a deduction for wages paid plaintiff for his sporadic, part-time employment.
2. Defendants are entitled to a credit for any total disability compensation or partial disability compensation previously paid to plaintiff.
3. Defendants shall pay for all medical expenses incurred as the result of plaintiff's 23 January 1998 injury by accident.
4. A reasonable attorney's fee of twenty-five percent of the compensation awarded is approved for counsel for plaintiff and shall be deducted from any accrued compensation and forwarded directly to counsel for plaintiff. Thereafter, defendants shall forward every fourth compensation check to plaintiff's counsel.
5. Defendants shall pay the costs.
This the ___ day of July 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER